Hillsborough
No. 88-178

SUBURBAN REALTY, INC.

v.

TED ALBIN

June 13, 1989

*Cullity, Kelley & McDowell*, of Manchester (*Benjamin Yardley* on the brief and orally), for the plaintiff.

*McSwiney, Jones, Semple & Douglas P.C.*, of Concord (*Robert J. Lynn* and *Katherine E. Stine* on the brief, and *Mr. Lynn* orally), for the defendant.

*Stephen E. Merrill*, attorney general (*Robert E. Dunn, Jr.*, attorney, on the brief), by brief for the State, as *amicus curiae*.

THAYER, J. The plaintiff, Suburban Realty, Inc., brought suit to recover a real estate broker's commission from the defendant, Ted Albin, pursuant to an alleged oral listing agreement. The Superior Court (*O'Neil*, J.) granted the defendant's motion to dismiss on the ground that the lack of a written listing agreement barred the plaintiff's recovery under New Hampshire Administrative Rule Rea 404.05 (Rule 404.05). The plaintiff now appeals.

The only issue raised in this appeal is whether the New Hampshire Real Estate Commission exceeded its statutory authority in promulgating Rule 404.05. For the reasons that follow, we affirm.

The plaintiff in its writ of summons alleged the following facts. On or about May 31, 1985, the plaintiff had entered into an oral real estate listing agreement with the defendant in which the defendant had agreed to engage the plaintiff for a 5% commission as a broker in the sale of certain property in Hooksett owned by the defendant. The plaintiff had produced a ready, willing, and able buyer who had entered into a purchase and sale agreement on June 7, 1985, to buy the defendant's property. Pursuant to the oral agreement, the plaintiff was entitled to a $25,000 broker's commission on the sale.

The defendant moved to dismiss the writ on the ground that even if the plaintiff's allegations were true, the contract would be unenforceable because it was not in writing as required by Rule 404.05. The trial court granted the defendant's motion, finding that "at best an oral listing existed," but that even assuming the existence of an oral agreement, the plaintiff's failure to execute a written listing agreement as mandated by Rule 404.05 barred the plaintiff's recovery. The court determined that the regulation was validly promulgated pursuant to RSA chapters 331-A and 541-A and was therefore binding upon the parties.

■ We note initially that where an administrative rule or its application threatens to interfere with a plaintiff's legal rights, the proper procedure for challenging the rule is through a declaratory judgment action in which the administrative agency is joined as a party, in order to afford the agency an adequate opportunity to defend its regulation. *See* RSA 541-A:7; *Blue Mountain Forest Ass'n v. Town of Croydon*, 119 N.H. 202, 205, 400 A.2d 55, 57 (1979). The plaintiff has failed to follow this procedure. However, where, as here, the trial court determined that the regulation was validly promulgated, and we uphold that determination, the State's interest in defending the validity of the regulation has not been prejudiced. To dismiss this appeal and direct the plaintiff to join the agency as a party in challenging the validity of the regulation in superior court would accomplish little and needlessly expend judicial resources.

Rule 404.05, as effective at the time of the transaction in question, provided that:

> "*Listing agreements*. Each contract providing for the listing of real estate for sale, lease, exchange or rent *shall be in writing* and contain the following information:
> (a) The date of the execution of the contract;
> (b) Address, location or description of the property;
> (c) The names, addresses and signatures of all parties;
> (d) The professional fee stated as a dollar amount, percentage or other specific consideration to be paid to the broker;
> (e) A provision under which the contract expires on a specific date unless expressly extended for a specific term in writing and signed by the parties."

N.H. ADMIN. RULES, Rea 404.05 (effective as amended September 19, 1984) (since amended August 31, 1987) (emphasis added). The plaintiff argues on appeal that the real estate commission exceeded its authority in promulgating this regulation because: (1) the statutory definition of "prohibited conduct" does not include the failure to execute a written listing agreement; and (2) the regulation impermissibly abrogates the common law rule permitting oral agency agreements.

■ It is well established that the legislature may delegate to administrative agencies the authority to promulgate rules necessary to implement a statute. *E.g.*, *Opinion of the Justices*, 121 N.H. 552, 557, 431 A.2d 783, 786 (1981); *Ferretti v. Jackson*, 88 N.H. 296,

298, 188 A. 474, 476 (1936). However, "[r]ules adopted by State boards and agencies may not add to, detract from, or in any way modify statutory law." *Kimball v. N.H. Bd. of Accountancy*, 118 N.H. 567, 568, 391 A.2d 888, 889 (1978) (citation omitted). "The rulemaking authority is granted to permit boards to fill in details to effectuate the purpose of the statute." *Id.* If the real estate commission exceeded this authority in promulgating Rule 404.05, then the regulation is invalid. *See id.*

■ RSA chapter 331-A establishes a comprehensive system for regulating real estate sales and brokerage practices. In RSA 331-A:4-b, the legislature mandated that the real estate commission adopt rules relative to, *inter alia*, the "[c]onduct of licensed brokers and salesmen." RSA 331-A:4-b, I. In construing this provision, we must be mindful of the "plain meaning" of the words when viewed in light of the statute as a whole. *See Theresa S. v. Sup't of YDC*, 126 N.H. 53, 55, 489 A.2d 592, 593 (1985). As we have stated, RSA chapter 331-A was enacted to protect the public against "'fraud and incompetence' at the hands of 'unscrupulous brokers and salesmen.'" *Corkin v. Elger Corporation*, 106 N.H. 522, 523, 214 A.2d 740, 741 (1965) (quoting *Coltin Company v. Manchester Savings Bank*, 105 N.H. 254, 256, 257, 197 A.2d 208, 210 (1964)). As the plaintiff acknowledges, a regulation requiring that real estate listing agreements be in writing is consistent with this statutory purpose. The plaintiff argues, however, that where the statute does not expressly state that all such agreements must be in writing, the commission had no authority to promulgate such a rule. The plaintiff draws our attention to RSA 331-A:4-b, II–IX and RSA 331-A:6-b.

RSA 331-A:4-b, II–IX list particular aspects of the examination and licensing process which the commission is empowered to regulate in addition to its authority to regulate the "conduct of licensed brokers and salesmen" under RSA 331-A:4-b, I. The subjects listed in paragraphs II through IX are not, as the plaintiff would have us believe, an elaboration of the types of conduct to be regulated under paragraph I.

RSA 331-A:6-b, I–XXI authorize the commission to suspend or revoke a broker's license under certain circumstances, including the licensee's performing certain specified acts of "prohibited conduct." The plaintiff points out that nowhere in the list of acts of prohibited conduct does the statute mention the use of oral listing agreements. However, the legislature apparently placed a premium on the value of written agreements as an effective means of preventing fraud in real estate transactions, as evidenced by the

numerous references to writings in RSA 331-A:6-b. *See, e.g.,* RSA 331-A:6-b, X (requiring written consent from all parties for whom a broker is acting in a transaction where the broker is acting for more than one party); RSA 331-A:6-b, XI (requiring written consent from the owner of property upon which a broker places a "for sale" or "for rent" sign); RSA 331-A:6-b, VII (mandating preservation for three years of all records relating to any real estate transaction). Most significantly, the statute prohibits a licensed broker or salesman from "[f]ailing to furnish a copy of *any listing,* sale, lease, or other contract relevant to a real estate transaction to all signatories thereof without delay." RSA 331-A:6-b, XII (emphasis added). The legislature's use of the words "a copy of any listing contract" indicates the legislature's contemplation that all listing contracts would be in writing. Rule 404.05 therefore merely states explicitly a requirement which is already implied within the statute itself. *See* RSA 541-A:1, XIII (Supp. 1988) (administrative agencies promulgate "rules" which "implement, interpret or make specific" a statute).

 It is upon this basis that we reject the plaintiff's second argument, that the regulation must be struck down as an improper attempt by the administrative agency to abrogate the common law rule permitting oral agency agreements between realtors and vendors. The plaintiff argues that "no evidence exists that the legislature intended to rewrite the common law." As we have stated, however, the regulatory requirement of written listing agreements is wholly consistent with the statutory intent of RSA chapter 331-A, to prevent fraud in real estate sales and brokerage transactions, and indeed is contemplated within the statute itself. Thus, we cannot accept the premise of the plaintiff's argument, that the legislature did not intend any alteration of the common law relative to the formation of real estate listing agreements.

The trial court in this case found that "[t]he rules of the commission are valid and binding and have the force of law," and, therefore, that the plaintiff's "failure to abide with the provisions of Rea 404.05 results in defeat of the plaintiff's claim." The plaintiff on appeal argues only that the regulation was beyond the commission's authority to promulgate. The plaintiff does not contend that even if validly promulgated, the regulation should not operate to bar enforcement of an oral contract. We therefore express no opinion on the merits of such a claim.

*Affirmed.*

All concurred.